IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EUGENE WILLIAMS, :
: CIVIL ACTION
Plaintiff, : NO. 16-4595
:
v. :
:
MONTGOMERY COUNTY :
CORRECTIONAL FACILITY, :
et al., :
:
Defendants. :

M E M O R A N D U M

EDUARDO C. ROBRENO, J. July 10, 2017

Plaintiff Eugene Williams ("Plaintiff") brings this action pro se under 42 U.S.C. § 1983 seeking damages for the conditions of his confinement at the Montgomery County Correctional Facility ("MCCF"), where he was temporarily housed from December 3, 2015, through January 13, 2016, to facilitate an appearance in the Montgomery County Court of Common Pleas. Specifically, Plaintiff alleges in his complaint that he is handicapped and was forced to shower without a chair at MCCF.

Defendant Julio M. Algarin ("Defendant"), who is and was the prison warden at MCCF at all times relevant to this case, filed a motion for summary judgment that Plaintiff opposed. For the reasons that follow, the Court will grant the motion, dismiss all claims, and enter judgment in favor of Defendant in this case.

I.   **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff arrived on crutches at MCCF on December 3, 2015, after a brief hospitalization for back injuries he claimed to have suffered while being transported in a paddy wagon from SCI-Graterford to the Montgomery County Court of Common Pleas the previous day.[1] See Williams Dep. at 12:16-22, 14:10-13, 19:20-24, Feb. 14, 2017, ECF No. 19-4. Following his arrival, Plaintiff was housed in section F-3, where he was restricted to a bottom bunk for sleeping and a bottom-tier cell assignment. Id. at 20:14-21:3.

The only shower that Plaintiff ever used at MCCF was the shower on the bottom tier of the F-3 housing section.[2] Id. at 24:21-25. This shower is equipped with a grab bar and non-skid rubber mat. Id. at 22:10-19; 24:12-16 (describing "stainless steel" grab bar and "a black rubber mat . . . there to keep you actually from slipping on the wet surface"); Julio M. Algarin Aff. at ¶ 4, Def.'s Mot. Summ. J. Ex. 2, ECF No. 19-3. When Plaintiff first arrived at MCCF on December 3, 2015, no shower

---

[1] Plaintiff describes himself as having been diagnosed with "spinal stenosis," "cervical bulging discs," and "neuropathy along with degenerate disc deterioration." Williams Dep. at 13:3-13. The circumstances surrounding Plaintiff's transportation in the paddy wagon are the subject of a related lawsuit before this Court, No. 17-883.

[2] Plaintiff testified that he showered approximately five times per week while incarcerated at MCCF, which was as often as his physical condition allowed. Id. at 58:1-8.

chair was available for the bottom tier F-3 shower. Williams Dep. at 26:5-11. As a result, Plaintiff suffered minor injuries from three separate falls in the shower. Id. at 48:13-50:20.

Plaintiff spoke with his caseworker counselor, Channel Moore, about the lack of a shower chair, and he was furnished with an inmate handbook detailing the grievance process at MCCF. Id. at 27:2-24; Moore Aff. at ¶¶ 3-5, Def.'s Supplemental Mem. Supp. Mot. Summ. J. Ex. 3, ECF No. 30-3. Approximately five to seven days after his arrival at MCCF, Plaintiff claims, he submitted a formal written request for a shower chair. Williams Dep. at 30:18-22. At the top of the request form, he wrote the word "grievance." Id. at 28:2-4.[3]

Within four or five days of submitting the formal request form, Plaintiff allegedly had conversations with two different prison officials, Captain Scott Moyer and Major

---

[3] Although counsel for Defendant "directed a search for any request slip submitted by Plaintiff for a shower chair," none was found. Def.'s Supplemental Mem. Supp. Mot. Summ. J. at 1. Relying on sworn affidavits from prison officials, Defendant disputes that Plaintiff ever submitted any request form or grievance. See Channel Moore Aff. at ¶ 11 ("Mr. Williams did not submit a request slip or grievance concerning a shower chair in the F-3 housing section. In fact, Mr. Williams did not submit any grievance during his incarceration at MCCF from December 3, 2015 through January 13, 2016."); Captain Scott Moyer Aff. at ¶¶ 5, 9, Def.'s Supplemental Mem. Supp. Mot. Summ. J. Ex. 1, ECF No. 30-1 ("To my knowledge, no grievance was ever filed regarding the conditions of his cell"; "To my knowledge, Mr. Williams did not submit a grievance concerning the lack of a shower chair for use in the F-3 bottom tier shower.").

Reginald Brown,[4] about his need for a shower chair. Id. at 30:23-31:22. Captain Moyer informed Plaintiff that the neighboring F-2 housing section had a shower chair that Plaintiff could share, and he personally brought the chair from F-2 to Plaintiff. Id. at 28:21-29:1; Captain Scott Moyer Aff. at ¶¶ 6-8, Def.'s Supplemental Mem. Supp. Mot. Summ. J. Ex. 1, ECF No. 30-1.

Approximately three weeks after Plaintiff's arrival at MCCF, a chair was made available to be shared between the F-2 and F-3 housing sections. Williams Dep. at 43:23-44:20. From that point forward, the shower chair was kept in a maintenance closet on the F Cell Block. Id. at 44:21-45:12. Plaintiff testified that he "always used the chair when it was available." Id. at 48:11-12.

Plaintiff applied to the Court to proceed in forma pauperis on August 22, 2016. ECF No. 1. On September 1, 2016, the Court granted Plaintiff's request, ECF No. 2, and his complaint was filed the same day, ECF No. 3. Defendant filed a motion to dismiss for failure to state a claim on October 31, 2016. ECF No. 7.

---

[4] Neither of these individuals is a party to this lawsuit. Additionally, Major Brown "[does] not recall any interactions with [Plaintiff] during his incarceration at MCCF from December 3, 2015, to January 13, 2016 regarding access to a shower chair in the F-3 bottom tier shower." Major Reginald Brown Aff. at ¶ 3, Def.'s Supplemental Materials Supporting Mot. Summ. J. Ex. 2, ECF No. 30-2.

Following a hearing held on the record with both parties on December 16, 2016, the Court issued an order granting in part and denying in part Defendant's motion to dismiss. ECF No. 11. In the same order, the Court directed Defendant to take Plaintiff's deposition and attach it to a motion for summary judgment.[5] See id.

Defendant filed a motion for summary judgment on March 20, 2017, ECF No. 19, and Plaintiff responded in opposition on April 3, 2017, ECF No. 23. The Court held a status conference on the record with Plaintiff and counsel for Defendant on April 24, 2017. See ECF No. 28. Following this conference, the Court ordered Defendant to supplement his motion for summary judgment and afforded Plaintiff an opportunity to supplement his response, if he so desired. ECF No. 29. In accordance with this order, Defendant filed a supplemental memorandum supporting his motion for summary judgment on May 10, 2017. ECF No. 30. Plaintiff did not file any supplemental materials.

---

[5] After the December 16, 2016, hearing, but before Defendant filed his motion for summary judgment, Plaintiff filed two separate motions requesting the appointment of counsel. See ECF Nos. 12, 14. The Court dismissed these motions without prejudice on May 17, 2017, reserving for the summary judgment stage full consideration of whether counsel should be appointed for Plaintiff in this case. See ECF No. 31. Because the Court finds that Plaintiff's claims have no "arguable merit in fact and law," Tabron v. Grace, 6 F.3d 147, 155 (3d Cir. 1993), the Court also concludes that the appointment of counsel is not warranted in this case.

## II. LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)). A fact is "material" if proof of its existence or nonexistence might affect the outcome of the litigation; a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

In considering a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010). The moving party bears the initial burden of showing the absence of a genuine issue of material fact, but meeting this obligation shifts the burden to the nonmoving party, who then must "set forth specific facts showing that there is a

genuine issue for trial." Anderson, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).

**III. DISCUSSION**

At this stage, all that remains of Plaintiff's complaint is an Eighth Amendment claim brought against Defendant pursuant to § 1983 for allegedly unconstitutional conditions of confinement caused by Plaintiff's lack of handicapped-accessible shower facilities.[6] Defendant has moved for summary judgment on grounds that (1) "[he] had no personal involvement in the circumstances surrounding Plaintiff's lack of a shower chair during his first three weeks of incarceration at MCCF," Def.'s Mot. Summ. J. at 8, ECF No. 19; (2) "[a]s a matter of law, Plaintiff's three week period of incarceration without a shower chair was not an 'extreme deprivation' of a 'sufficiently serious' nature to support an Eighth Amendment claim," id. at 10; and (3) "Plaintiff cannot recover compensatory damages for emotional distress or mental anguish because he suffered merely de minimis physical injuries," id. at 11. The Court disposes of

---

[6] Plaintiff initially named three defendants in his complaint, but the Court dismissed as legally baseless all claims against former Defendants Montgomery County Correctional Facility and the Honorable Thomas P. Rogers of the Montgomery County Court of Common Pleas. See ECF No. 2. Further, following the December 16, 2016, hearing, the Court granted Defendant's motion to dismiss Plaintiff's claims concerning alleged deficiencies in the toilet facilities at MCCF. See ECF No. 11.

7

the motion on the first of these grounds and need not reach the other two.

### A. Supervisory Liability

Section 1983 imposes civil liability "upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." Gruenke v. Seip, 225 F.3d 290, 298 (3d Cir. 2000); see also 42 U.S.C. § 1983. "This section does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right." Id. (citing Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)).

Section 1983 supports two theories of supervisory liability: "one under which supervisors can be liable if they 'established and maintained a policy, practice or custom which directly caused [the] constitutional harm,' and another under which they can be liable if they 'participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations.'" Santiago v. Warminster Twp., 629 F.3d 121, 129 n.5 (3d Cir. 2010) (alterations in original) (quoting A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004)); see also McKenna v. City of

8

Phila., 582 F.3d 447, 460 (3d Cir. 2009) ("To be liable . . ., a supervisor must have been involved personally, meaning through personal direction or actual knowledge and acquiescence, in the wrongs alleged."). Additionally, § 1983 supports municipal liability under Monell v. Department of Social Services, 436 U.S. 658 (1978), if a plaintiff shows that "an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990) (citing Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990)).

The Court agrees with Defendant that he is not subject to supervisory liability in this case because Plaintiff has neither alleged nor shown that Defendant established any policy, practice, or custom that directly caused Plaintiff's injuries or that could have subjected him to Monell liability, nor has Plaintiff alleged or shown that Defendant personally participated in the events at issue in any way. Plaintiff does not claim that he ever spoke directly with Defendant, that he had any reason to believe that Defendant was aware of his problem, or that MCCF had any sort of policy, custom, or practice of denying shower chairs to handicapped inmates.[7] Not

---

[7] Although Plaintiff initially claimed in his complaint that he submitted two grievances to Defendant, see Compl. at 4,

9

only does Plaintiff fail to allege that Defendant established any "policy, practice or custom which directly caused [the] constitutional harm," Santiago, 629 F.3d at 129 n.5 (quoting A.M., 372 F.3d at 586), but it is difficult to imagine what type of policy Defendant might have promulgated that would have directly caused Plaintiff's injuries--particularly given that Plaintiff was, in fact, provided with a shower chair after he asked for one.[8]

For his part, Defendant affirmatively denies any awareness of any of the events associated with Plaintiff's complaint. By sworn affidavit attached to the motion for summary judgment, Defendant states that, throughout the duration of

---

he has since abandoned that claim; Plaintiff did not so much as mention Defendant during his 97-minute deposition, and no evidence on the record supports an inference that Plaintiff submitted any grievance at all (let alone that he submitted two grievances to Defendant personally). To the contrary, the evidence overwhelmingly suggests that Plaintiff spoke only with Captain Moyer and never filed any grievance. See supra 3 n.3.

[8] In his response opposing the motion for summary judgment, Plaintiff attempts to clarify his argument that he is "blaming the Warden because it is his duty to have known what the law required [regarding] handicapped-accessibility of the shower in his Official and Individual capacity." Pl.'s Resp. Opposing Def.'s Mot. Summ. J. at 2, ECF No. 23. Construing this as an argument for Monell liability on the basis that Defendant is "an official who has the power to make policy" and was "responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom," Bielevicz, 915 F.2d at 850, the provision and personal delivery of a chair following Plaintiff's request for one undermines any claim that Defendant or MCCF had any policy, practice, or custom of denying shower chairs to handicapped inmates.

Plaintiff's incarceration at MCCF, Defendant was "not aware that [Plaintiff] was in need of a shower chair," "not aware that a shower chair was not available for use in the F-3 bottom tier shower," "not aware that [Plaintiff] had complained about the lack of a shower chair for use in the F-3 bottom tier shower," and "not aware of any conversations [Plaintiff] had with security staff or with medical staff about having a shower chair available for his use." Algarin Aff. at ¶¶ 6-9.

Because the parties do not dispute that Defendant was not "involved personally . . . through [either] personal direction or actual knowledge and acquiescence" in the delayed provision of a shower chair to Plaintiff, the Court concludes that Defendant cannot be held liable as a supervisor under § 1983. See McKenna, 582 F.3d at 460. Defendant is therefore entitled to summary judgment in his favor on all claims in this case.

**IV. CONCLUSION**

For the foregoing reasons, the Court will grant Defendant's motion for summary judgment, dismiss all claims in this case, and enter judgment in favor of Defendant. An appropriate order and judgment follow.